### Case No. 4,163.
DUNLAP et al. v. PYLE et al.
SAME v. DAKIN et al.
[5 McLean, 322.] [1]
Circuit Court, D. Ohio. Oct. Term, 1851.

Robertson, Probasco & Mickle, for plaintiffs.

Harlan & Corwin, for defendants.

OPINION OF THE COURT. This case was submitted to the court at the last term, but not receiving the argument on both sides, I did not examine the papers until the present term.

Major William Boyce, the ancestor of the plaintiffs, and under whose will they claim the land in controversy, died in Fayette county, Kentucky, early in 1812. He was, at his death, seized of three surveys of land in the state of Ohio, which he devised as follows:

[1] [Reported by Hon. John McLean, Circuit Justice.]

After naming his elder children who had received from him their just proportion of his estate, he declares, "As my estate lies in various parts of the world, and of various descriptions of property, so that I cannot make equal distributions in my will among the rest of my children, who have as yet not received their patrimony, by pointing out to each their kinds of property, in order to do equal justice to them and my loving wife, I give and bequeath every part of my estate, of every kind whatsoever, to be equally divided (by sale or otherwise, as may seem best), between my loving wife and my children, not heretofore named, and their heirs forever, having particular regard to the education of my children, not as yet educated." "I constitute, ordain, and appoint, my loving wife Elizabeth, my executrix, my sons, John and William, and Thomas Wrenn, my son-in-law, the whole and sole executors of this my last will and testament." The will was proved in February, 1812, and on the 11th of August ensuing, Elizabeth Boyce, the executrix, took the oath, and gave security for the faithful performance of her duties, in the sum of sixteen thousand dollars. No other one of the executors named was qualified to act as such. About seven months after the death of the testator, his widow was married to Gerard McKinney, who took upon himself the settlement of the estate of Boyce, and sold the lands now in controversy, under which sales the defendants claim.

The principal questions which arise in the case, are: 1. Did the will confer a power on the executors to sell the land in controversy? 2. If it did, has the power been properly executed? 3. What effect has the statute of limitations upon the rights claimed by the plaintiffs?

It is intimated in the argument that the plaintiffs must claim as heirs, and not as devisees. And so claiming, that their legal interests are in common with the other children of the testator. That the plaintiffs, not being vested with the legal estate of the lands claimed by them, have an exclusive right only to the proceeds after they shall be sold. This could not have been the intention of the testator. He bequeathed every part of his estate, of every kind, to be equally divided, by sale or otherwise, as may seem best, &c. The lands were given to the devisees, to be divided in equal parts among them; but if it should be deemed best to sell them, the proceeds to be divided equally. The title to these lands was vested in the devisees. Did the testator require these lands to be sold? He required them to be equally divided or sold, "as may seem best." Now, who was to determine this matter? The executors? That is the argument of the defendants. It must be observed that the lands are not given in trust to the executors to be sold. This is the usual course, when a testator authorizes a sale of his real estate for distribution among his devisees, or to

pay debts. There is no power given to the executors in the will to sell these lands, unless it can be inferred from the clause which authorizes a division of them, by sale or otherwise, "as may seem best." Could the executors have made legal partition of these lands among the infant heirs? A partition which would have bound them when they were of age. Such a duty is not ordinarily performed by executors. It in fact is never done, and cannot be done by them, unless the power to do so be expressly given in the will. There is no such express power given in this will. Can it be inferred from the above clause?

The defendants argue from the necessity of selling the land to educate and support the devisees, all of whom, except two, were under ten years of age, the power to sell by the executors, must be inferred, as within the intention of the testator. This argument rests on an assumption not sustained by the facts. The testator bequeathed the whole of his property to the devisees. Not only these lands, but his entire estate, which he says "lies in various parts of the world, and consists of various descriptions of property." That he had a large personal property may fairly be presumed, from the amount of security required to be given by the executrix. If the executors could not make a legal partition of the lands, could they sell them? "as may seem best," they may be divided or sold. Now, is there any distinction in regard to the power of the executors, in the one alternative or the other? They are equally within the provisions of the will, and it would seem, if there be no power to partition, in the executors, there can be no power to sell. How are the rights of infants to be protected? Not by executors or administrators, but through the agency of guardians who are appointed by the courts, and who are required to give bonds, and whose acts are subject to the supervision and control of the courts. Suppose the sale of these lands had been necessary for the support of the family, could that have influenced the construction of the will? We suppose not. On application to the court in the county where the lands are situated, by the guardian of the infants, showing that the sale was necessary for their maintenance, a sale would have been ordered, and a legal title made, in this mode, to the purchasers. To whom, then, may we presume, the testator referred in saying that the lands should be divided or sold, "as may be deemed best"? The lands belonged to the heirs, and could not be made subject to the debts of the estate, unless there had been a deficiency in the personal assets. In that event, and in no other, could the lands, ordinarily, come under the control of the executors, by virtue of an order of court. The testator must have referred to those who should have the legal guardianship of the infants, and their property, and who were responsible to them,

and acting under legal restraints. Or he must have referred to the infants when they should be capable of acting for themselves. He could not have referred to the executors who had no agency over the lands by the will. Their interests, as the result has most unfortunately shown, were antagonistic to those of the infants. The reference was to those who had the power to partition the lands, or sell them, either by their own acts, or through the agency of the proper tribunal. Now, the executors under the will had no power to make partition of the lands, nor to sell them.

It is said if the executrix could not sell these lands, she had nothing to do. The personal property was held in trust by her, to pay debts, &c. With the real estate she had nothing to do.

Suppose the power to sell was given to the executors, has that power been properly exercised? The husband of the executrix was rightfully associated with his wife in the administration of the estate. But could he act alone? Could he act as the agent of the executrix, without her concurrence? If she was authorized to sell the lands, or divide them among the heirs "as might seem best," it was a special trust and confidence, which she only could discharge. She could substitute no agency to determine whether the lands should be divided or sold. Her own judgment was to be exercised on the subject, being vested with the power to decide this matter by the will.

The conveyances made to the purchasers are not among the papers. But it is proved that the sale was made, and also the conveyances, by McKinney. It is satisfactorily shown that at the time the deeds were executed, the executrix was in Kentucky, and the deeds were executed in Ohio. The name of the executrix is affixed by her husband, as agent. This is illegal. He could neither contract to sell the lands, nor convey them as her agent. If, then, the power to sell were unquestionable, it has not been properly exercised. McKinney, by his marriage, had no more power to execute the trust than a stranger. Nothing short of a signing and a due acknowledgment by the executrix, could devest the title of the heirs. So far as the individual interest of Mrs. McKinney was concerned in the lands, she had a right to sell and convey them. And a deed duly executed, would have conveyed a title to that extent.

What effect has the statute of limitations on the rights of the devisees? It is admitted by their counsel, that John Boyce, who was in Ohio at the time the deeds for the lands were executed, is barred by the statute. He is dead, but his heirs cannot claim by reason of the bar against their ancestor. But the residence of the other devisees is shown to have been in Kentucky, and there is no proof that any of them have been in Ohio. They must be considered, then, as non-residents,

and the statute must be applied to them in that relation. At the time this suit was commenced, the limitation was twenty-one years. By the statute of the 1st of April, 1846, the saving of non-residence was repealed. And it is contended that by this repeal the rights of the devisees must stand, as though there had been no saving in behalf of non-residents. Some countenance is given to this argument by the decisions in the cases of the Whitney v. Webb, 10 Ohio, 513; and in Ridley v. Hettman, Id. 524, in which the court say, "The death of a person while laboring under disability, is entirely unprovided for." "The only alternative then to which we can cling, is to say that such person stands upon the same footing as resident of the state, and that the lapse of twenty years, from the time the cause of action accrued, will be a bar to the assertion of the right." But these decisions were explained in the case of Carey v. Robinson, 13 Ohio, 181. By that decision the statute begins to run against the heirs of a deceased non-resident, from the time of his death. The proviso in the act of 1846 embraces the case of the devisees. The statute after declaring that the disability of non-residence shall not exist, so far as relates to the action of ejectment, provides, that all persons whose cause of action had accrued, at the date of the statute, their right to sue should be extended to the 4th of July, 1847. The actions under consideration were brought in 1846, within the limitation; and no bar exists, except as to the right of John Boyce, under the will. But his interest, which descended to him on the death of Daniel and Caroline, his brother and sister, is not barred. This being an action at law, we can only look to the legal title. If there be any equitable circumstances arising out of the application of the money for which the lands were sold, or on other grounds, they cannot be considered in this case.

The plaintiffs are entitled to recover all their original rights under the will, except John Boyce's heirs, and the plaintiffs are entitled to recover the rights descended to them by the deaths of their co-heirs. Judgment accordingly.